Solé Electric, Inc., demandante y recurrente, *v.* The Bank of Nova Scotia y Banco Crédito y Ahorro Ponceño, demandados y recurridos; Banco Crédito y Ahorro Ponceño, tercero demandado y recurrido.

Número: R-72-106      Resuelto: 21 de febrero de 1975

*Rúa, Mercado & González,* abogados de la recurrente; *Brown, Newsom & Córdova,* e *Iván Díaz de Aldrey,* abogados de The Bank of Nova Scotia; *F. Castro Amy,* abogado del Banco Crédito y Ahorro Ponceño.

EL JUEZ ASOCIADO SEÑOR DÍAZ CRUZ emitió la opinión del Tribunal.

La recurrente Solé Electric, Inc., una importante firma comercial dedicada a la venta de materiales eléctricos con un volumen anual de ventas que se aproximaba a los tres millones de dólares, operaba con un sistema de contabilidad tan rudimentario y una ausencia de control interno tal, que no llevaba registro de compras, un número considerable de las facturas de sus suplidores no se marcaban pagadas al expedirse el cheque, pago que sólo constaba en una removible cinta de máquina de sumar, operada por su empleado Alvarez, a cargo del pago de facturas, quien además de no ser supervisado por persona alguna, organizaba las facturas de los suplidores, preparaba los cheques para su pago, tomaba las firmas autorizadas y cuando llegaba el estado mensual de la cuenta corriente del Banco Nova Scotia sólo él intervenía en la reconciliación y cotejo de los cargos hechos por el banco. El abandono y la omisión por la recurrente Solé Electric de todo mechanismo para fiscalizar y supervisar las actuaciones de su pagador Alvarez se combinaron con la deshonestidad de éste para defraudar a la corporación por la suma aproximada de $200,000 durante un periodo de cuatro años, valiéndose de una treta burda que el menos avisado contador hubiera descubierto en su inicio. Se dedicó a repetir o duplicar cheques en pago de

una misma factura, tomaba la firma de los incautos directores en los cheques girados contra la cuenta de Solé en el Banco Nova Scotia, le remitía uno de los cheques al suplidor en pago de su factura y endosaba el otro falsificando el endoso del suplidor y poniendo su endoso propio, y así lo depositaba en una cuenta que abrió en el Banco Crédito y Ahorro con el sugestivo nombre de "American Enterprises" y de cuya cuenta retiró el dinero a su discreción. A tal grado llegó la despreocupación de los giradores, directores de Solé Electric, y la ausencia de todo control de contabilidad, que Alvarez logró las firmas autorizadas en los cheques para pagar la misma factura dos veces en el mismo mes. El Banco Crédito nunca cuestionó los endosos para depósito en la cuenta de "American Enterprises", y cobró todos los cheques al girado Nova Scotia al que los remitía con sello de "For Collection. All Prior Endorsements Guaranteed." Durante todo el periodo de octubre de 1958 a agosto de 1962 el Nova Scotia cargó en la cuenta de Solé Electric un total de 219 cheques con endosos así falsificados los cuales devolvía cancelados y cargados a la cuenta corriente de la recurrente con el estado mensual.

Cuando a los cuatro años vino a descubrirse el fraude Solé Electric demandó tratando de recobrar de su banco girado Nova Scotia y éste trajo el pleito al intermediario Banco Crédito. El tribunal de instancia concedió la reclamación por sólo $5,378.94, suma total de nueve cheques librados de octubre a noviembre, primer mes de la operación fraudulenta durante el cual no había llegado todavía al girador Solé Electric el estado mensual de los cheques cancelados y que pudieran darle aviso de la falsificación. La sentencia dispuso que el Banco Crédito deberá satisfacer a Nova Scotia lo que éste pague a Solé Electric y desestimó la demanda por el balance restante reclamado. Sólo ha recurrido Solé Electric y expedimos el auto considerando la regla general de que la firma falsificada en un cheque no trasmite derecho. Art. 376

del Código de Comercio (19 L.P.R.A. sec. 24). (¹) Se reconoce como excepción a dicha regla que no será responsable el banco que paga un cheque falsificado si la falsificación es imputable a la crasa negligencia del girador. El banco que paga un cheque con endoso falsificado puede, en casos limitados, librarse de responsabilidad al girador demostrando que éste ha incurrido en negligencia que facilite el pago sin que el banco incurriere en negligencia. Bailey, *Brady on Bank Checks*, sec. núm. 15.9, pág. 475, 4ta. ed. 1969.

■  El propio citado Art. 376 del Código de Comercio reconoce la excepción y exonera el banco si el girador estuviere impedido de alegar la falsificación. El cuadro de hechos informados al principio que representa a la recurrente exigiendo la firma de por lo menos dos directores para girar contra su cuenta bancaria y por otro lado dejando en manos de un solo empleado la preparación de cheques y su reconciliación con el estado bancario es indicio de un grave descuido que propició el fraude. Toma relieve la negligencia si añadimos los hechos probados de ser los suplidores de Solé Electric conocidos de ésta a través de los años y que tan fácil hubiese sido descubrir la falsificación comprando los endosos en los cheques duplicados, como también se pudo con poco esfuerzo y simple examen de los estados mensuales revelar la identidad de cifras y suplidores en los cheques repetidos y el sospechoso endoso de distintos suplidores de Estados Unidos a favor de una misma entidad llamada "American Enterprises" en un banco de San Juan.

---

(¹) Art. 376 Código de Comercio

"Cuando se falsificare una firma o se hiciere sin autorización de la persona de quien se supone que procede la firma, no tendrá efecto alguno, ni se adquirirá, en virtud de ella, derecho alguno para retener el documento o para cancelarlo o para obligar al pago del mismo a cualquiera de las partes que en él figuren, a menos que la parte contra quien se tratare de hacer valer tal derecho estuviere impedido para alegar en su defensa la falsedad o falta de autorizción."

Sobre hechos similares pasó el Tribunal Supremo de California y dictaminó que la negligencia del girador impide su reclamación por endoso falsificado. En aquel caso un tenedor de libros del girador tomó facturas de los acreedores de éste, obtuvo la expedición y entrega de cheques a dichos acreedores, y luego usó la misma factura una segunda vez y consiguió se expidieran cheques nuevamente a los mismos acreedores. El tenedor de libros de California al igual que el de Solé Electric, falsificó los endosos de los acreedores en los cheques duplicados y se apropió su importe. Se sostuvo que los hechos planteaban una cuestión de negligencia del girador en el manejo de las facturas especialmente en su omisión de marcarlas "pagado" en la primera ocasión en que le fueron presentadas para el pago legítimo a los acreedores; y que además hubo negligencia del girador al no supervisar adecuadamente las actividades del tenedor de libros, por lo que se denegó un veredicto contra el banco. *Atlas Vegetable Exchange, Inc.* v. *Bank of America*, 89 Cal. Rptr. 274 (1970), según citado por *Brady on Bank Checks,* Suplemento Núm. 1, año 1975, sec. 15.9, pág. 228.

■ La responsabilidad de un banco por los dineros de sus depositantes no es la de un tutor o administrador con la obligación de suplir a éstos un mínimo de fiscalización y orden en sus cuentas y sistemas de contabilidad, porque aparte de la imposibilidad práctica ello equivaldría a colocarlos en la posición de proteger intereses que el propio dueño descuida y abandona. La recurrente no desplegó ese mínimo de cuidado y control de su contabilidad en evitación de desfalcos que pretende delegar en los bancos y que es elemental requisito en la ordenada reciprocidad de las relaciones comerciales entre girador y girado.

Según hemos indicado, este caso es de excepción y distinguible en sus hechos de los que sostuvieron la decisión de este Tribunal en *Maryland Casualty Co.* v. *Banco Popular*, 92 D.P.R. 331 (1965), donde al responsabilizar al banco la razón de decidir se fundó en que de ordinario el depositante no tiene

control sobre el número de endosos que han de recibir sus cheques ni tiene medios de verificar, al recibir los cheques cancelados si esos endosos son legítimos o falsos, ya que en la generalidad de los casos dichos endosos resultan ser nombres desconocidos, y añadiríamos ilegibles. Pero este no es el caso corriente que gobierna la regla de *Maryland Casualty Co.* Aquí estaba enteramente al alcance del depositante recurrente descubrir a tiempo, en el primer estado de cuenta, la cruda falsificación. Los cheques tenían sólo dos endosos, uno falso del suplidor de materiales y otro de su propio empleado Alvarez disfrazado como American Enterprises. Concluyó el juez de instancia que la recurrente "llevaba relaciones comerciales con los suplidores desde hacía muchos años. La demandante les pagaba sus facturas prontamente y los suplidores siempre depositaban los cheques que les enviaba la demandante en sus respectivos bancos, endosándolos para depósito en éstos y nunca tuvieron relaciones comerciales con ni conocían a 'American Enterprises'; y que hubiese sido fácil detectar la diferencia entre sus endosos en los cheques que recibían de la demandante y los endosos de sus firmas que aparecían en los cheques fraudulentos." (Determinaciones de hecho, párrafo 11, pág. 6.)

■ Adicionalmente, si Solé Electric no hubiese entregado al propio falsificador la reconciliación de los estados mensuales, cualquier otro empleado se hubiera detenido y alertado a la simple vista de dos cheques por idéntica cantidad, librados a la orden del mismo suplidor y uno de ellos endosado y depositado por el propio Alvarez, único encargado de pagar las facturas. Si bien no es de tanto rigor la obligación del girador de vigilar los endosos falsos en sus cheques cancelados, como lo es la de examinarlos en cuanto a falsificación de su firma y alteraciones materiales, es deber del depositante establecer un sistema de contabilidad y un método de negocio razonablemente dirigidos a evitar o hacer difícil la falsifica-

ción de endosos, especialmente por sus propios empleados. La responsabilidad por el incumplimiento de esta obligación es análoga a la impuesta al girador que falla en examinar adecuadamente sus cheques cancelados y otros comprobantes en cuanto a falsificación de su propia firma y alteraciones materiales. *Portilla* v. *Banco Popular*, 75 D.P.R. 100 (1953); *Britton on Bills & Notes*, sec. 143, pág. 407, ed. 1961; Brady, *opus cit.*, sec. 15.9, pág. 475, 4ta. ed. 1969.

■ Al permitir durante cuatro años la conducta fraudulenta de su empleado, que tan fácilmente pudo cortar en su principio, sin informar a los bancos la irregularidad ni objetar los cargos, la negligencia extrema y supina laxitud de la recurrente fue la causa principal preeminente de su pérdida, y le impide recobrar más allá del primer mes en que todavía no había llegado a su poder el estado de cuenta bancaria, instrumento de rectificación. *Portilla*, ante.

*La sentencia revisada será confirmada.*

El Juez Presidente Señor Trías Monge y el Juez Asociado Señor Negrón García no intervinieron.