ST. PAUL FIRE & MARINE INSUR-
ANCE COMPANY and Lewis Business
Forms of Puerto Rico, Inc., Plaintiffs,
Appellants,

v.

CAGUAS FEDERAL SAVINGS & LOAN
ASSOCIATION OF PUERTO RICO,
Defendant, Appellee.

No. 85–2007.

United States Court of Appeals,
First Circuit.

Heard June 5, 1986.
Decided Feb. 2, 1989.

Paul R. Devin, with whom, Allen N. David, Jonathan G. Brougham and Peabody & Arnold, Boston, Mass., were on brief, for plaintiffs, appellants.

Miguel E. Bonilla–Sierra, San Juan, P.R., with whom, Luis R. Montanez–Aviles and Montanez & Alicea, Hato Rey, P.R., were on brief, for defendant, appellee.

Before CAMPBELL, Chief Judge, BROWN,* Senior Circuit Judge, and BREYER, Circuit Judge.

PER CURIAM.

This appeal resulted in our certifying certain questions of law to the Supreme Court of Puerto Rico. A copy of our certification is attached and made part hereof. [Editor's Note: The Certification is published at 825 F.2d 536.] On June 30, 1988, the Puerto Rico court issued an opinion responding to those questions. We attach a copy of that opinion.

There remains only the question of disposition. Initially we believed that the answer was clear, the Supreme Court of Puerto Rico having provided answers to our questions. The district court had found that

> the proximate cause of the loss claimed was plaintiff Lewis' negligence in not having a proper segregation of duties, in relation to control over company assets and the recording of those assets.

And the Supreme Court of Puerto Rico had ruled that, while a collecting bank is liable without negligence to the payee of a check which bears the payee's unauthorized endorsement, the bank will be fully relieved of liability "in cases where the sole negligent party has been the drawee or payee." It seemed, therefore, that we should affirm the judgment of the district court in favor of the defendant bank.

Lewis, however, has raised a further question which, upon reflection, seems to us to warrant a remand to the district court rather than a simple affirmance. Lewis argues that the nature of its own conduct, upon which the district court had based its finding of negligence, cannot relieve the bank from liability since it was too remote to be proximately connected to the loss. In support of this contention, Lewis cites to cases standing for the proposition that, for

---

* Of the Fifth Circuit, sitting by designation.

a *payee's* negligence to bar recovery, the payee's conduct must have directly and proximately affected the bank's conduct. Annotation, *Payee's Prior Negligence Facilitating Forging of Endorsement as Precluding Recovery from Bank Paying Check,* 87 A.L.R.2d 638, 640–41 (1963). Lewis particularly relies upon the Fourth Circuit's decision in *R. Mars, The Contract Co. v. Massanutten Bank of Strasburg,* 285 F.2d 158 (4th Cir.1960), which held, in a situation somewhat analogous to the present, that plaintiff's failure to segregate functions did *not* bar plaintiff's claim against the bank. The Fourth Circuit believed that the plaintiff's unbusinesslike conduct and lack of careful supervision of a fraudulent employee were factors too remote to be the proximate cause of loss. *Id.* at 161. *See also Fargo National Bank v. Massey–Ferguson, Inc.,* 400 F.2d 223, 227 (8th Cir.1968).

The Supreme Court of Puerto Rico, quite properly, did not specifically address this particular issue, as it was never asked to do so. Indeed, plaintiff Lewis did not focus on the question during argument of the appeal, and it is not clear to what extent the parties directed the district court's attention to it, although we cannot say the matter was not raised at all.

The Supreme Court of Puerto Rico did cite in its opinion responding to our inquiries the A.L.R. annotation containing this rule for proximate causation of a payee's loss, 87 A.L.R.2d 638 (1963). It is thus arguable that Puerto Rico would give some weight to the line of authority that *R. Mars, the Contract Company* embodies. Pointing in another direction, however, the Supreme Court cited to *Sole Electric, Inc. v. Bank of Nova Scotia,* 103 D.P.R. 423, 426 (1975). If fully transferable to these facts, *Sole Electric* might support the holding for defendant bank, at least if the duty of a payee, such as Lewis, is the same as that of a drawer, such as the plaintiff in *Sole Electric,* who has a contractual relationship with the bank.

Negligence and causation are traditionally mixed questions of fact and law. Here, the law to be applied is that of Puerto Rico and the facts as well as the law involve a fair degree of subtlety. In such circumstances, we think it best that the issue raised by Lewis be revisited and resolved by the district court, a tribunal especially well qualified to determine whether Lewis's actions bear a sufficient causal relationship to the loss to meet the standard for payee negligence contemplated by the Supreme Court of Puerto Rico in its response to our questions. When the case was first decided, the parties and the district court did not have the benefit of the Supreme Court of Puerto Rico's opinion, hence the focus was largely on different issues which have since been laid to rest.

We accordingly vacate the judgment below and remand for further proceedings consistent with the opinion of the Supreme Court of Puerto Rico. In so doing we do not mean to reflect any prejudgment one way or another concerning the district court's findings of negligence and causation, which the lower court may either reinstate or overturn as it thinks correct. We remand only because we believe the issue now being raised is of sufficient import to merit the district court's further consideration.

VACATED AND REMANDED.

## APPENDIX A

### (Translation)

### IN THE SUPREME COURT OF PUERTO RICO

St. Paul Fire & Marine

Insurance Company and Lewis

Business Forms of Puerto Rico,

Inc., Plaintiff

v.

Caguas Federal Savings &

Loan Association of

Puerto Rico, Appellee

No. CE–86–493

Certification

MR. CHIEF JUSTICE PONS NUNEZ delivered the opinion of the Court.

San Juan, Puerto Rico, June 30, 1988

Pursuant to Rule 53.1(c) of the Rules of Civil Procedure and Rule 27 of the Rules of

this Court, the United States Court of Appeals for the First Circuit has certified to us two questions regarding the Negotiable Instruments Act, 19 L.P.R.A. §§ 1–386, and its relation with the general law on damages:

1. Is a collecting bank liable without negligence to the payee of a check which bears the payee's unauthorized endorsement?

2. If so, is the payee's prior negligence a defense to such liability?

Before answering the certified questions, we must briefly relate the facts of this case.

### I

Lewis Business Forms, Inc. (Lewis) is a Florida corporation that has maintained a branch office in Puerto Rico since 1961. Luis A. Ayala was Lewis' Puerto Rico accountant from 1967 until 1982. His duties as accountant included preparing invoices and handling payment. However, Ayala was not authorized by Lewis to cash or endorse checks. The trial court found Lewis negligent in failing to segregate these two functions; combining them in only one person allowed Ayala to create an elaborate embezzlement scheme which went undetected for almost ten years.

The embezzlement plan began when Ayala opened a bank account at Caguas Federal & Loan Association (Caguas), under the name "Luis Ayala d/b/a Lewis Business Forms." The sole signature on the account was Ayala's. Caguas had no prior commercial relationship with Ayala or Lewis. Ayala then stole checks remitted by Lewis' clients in payment of merchandise, endorsed them without Lewis' authorization, and deposited them in the Caguas account. He later withdrew money for his personal use.

Ayala escaped detection through the use of several fraudulent accounting techniques. By the time his embezzlement was discovered, he had taken $286,595.87 belonging to Lewis.

Lewis' insurer, St. Paul Fire & Marine Insurance Company, covered about two thirds of the loss. Both corporations filed an action against Caguas, alleging *inter alia*, that a depositary bank which pays an unauthorized indorser or forger is liable to the payee under sec. 24 of the Negotiable Instruments Act, 19 L.P.R.A. § 24.

Alleging that the Bank had not incurred negligence and that Lewis had been negligent upon not adequately segregating functions in the accounting department of its Puerto Rico branch office, the trial court dismissed the complaint. On appeal, Lewis reiterates its argument that Caguas is liable under sec. 24 of the Negotiable Instruments Act. Caguas contends, on the other hand, that, absent a contractual relationship between the bank and Lewis, pursuant to art. 1802 of the Civil Code, 31 L.P.R.A. § 5141, it would be liable only if the damage had been the result of Caguas' negligence.

### II

Section 24 of the Negotiable Instruments Act provides:

When a signature is formed or made without the authority of the person whose signature it purports to be, it is wholly inoperative, and no right to retain the instrument, or to give a discharge therefor, or to enforce payment thereof against any party thereto can be acquired through or under such signature, unless the party, against whom it is sought to enforce such right, is precluded from setting up the forgery or want of authority. Commerce Code, 1932, art. 376 (19 L.P.R.A. § 24).

We have repeatedly construed this section in the sense that the bank that pays a check under a forged or unauthorized signature or indorsement is directly liable to the drawer or his agent. This notwithstanding, the drawer or his agent cannot claim from the bank when, absent negligence by the latter, the proximate cause of the forgery is the drawer's negligence. *Sole Electric, Inc. v. Bank of Nova Scotia,* 103 D.P.R. 423 (1975); *P.R. Tob. Mkt. Ass'n v. P.R. Amer. Ins. Co.,* 100 P.R.R. 386 (1972); *Maryland Casualty Co. v. Banco Popular,* 92 P.R.R. 320 (1965); *Por-*

*tilla v. Banco Popular*, 75 P.R.R. 94 (1953).

Please note that, in all the cited cases, it is the drawer who claims against the drawee bank. "[T]he action in these cases does not arise from bills of exchange, nor from checks, nor from other instruments of exchange, but that it is an action for collection of money based on a loan contract (the current account) and on a relationship of creditor and debtor." *Maryland Casualty Co., supra* at 324.

Contrary to other cases decided by this Court, in the instant case there is no contractual relationship between the parties because here the payee is the one claiming from the bank. However, this does not bar application of sec. 24 of our Negotiable Instruments Act to the present controversy. Said section makes no distinction, for applicability purposes, between claims filed by drawers and those filed by payees. It merely provides that an unauthorized signature does not affect an instrument unless the party—drawer or payee—is barred from alleging that it is false or unauthorized.

It should be borne in mind that, insofar as the instant case is concerned, this is a special provision, and hence, it "must prevail over any other applicable rule of a general character." *Paris v. Canety*, 73 P.R.R. 386, 388 (1952). Consequently, this case cannot be governed by the Civil Code provisions, specifically by art. 1802 (31 L.P. R.A. § 5141), despite the fact that there is no contractual relationship between the parties. In cases like the one at bar, we can resort to the Civil Code only when some aspect of the controversy cannot be duly adjudicated under the Negotiable Instruments Act and, in an ancillary manner, by the Commerce Code, after which resort may be had to the Civil Code as supplementary law. See 19 L.P.R.A. § 386; 10 L.P.R. A. § 1002. It is important to acknowledge that a separate and distinct cause of action issues from sec. 24 in favor of the drawer or payee against the bank, even if the latter has not incurred negligence; but we will elaborate on this further on. We deem that sec. 24 and not art. 1802, under which negligence is an unavoidable element, is the adequate provision to deal with the issue raised here. Section 24 is based on a legal tradition—and, consequently, on grounds different from those of art. 1802—that does not contemplate negligence as an indispensable element of the cause of action. Under a sound adjudicative and interpretative theory, this provision and its history should govern our analysis of the issue under our consideration.

### III

Our Negotiable Instruments Act stems directly from the Uniform Negotiable Instruments Law of 1896, the first uniform law to be widely accepted through the United States. See Beutel, *Brannan Negotiable Instruments Law* 73–79, Anderson Co. (7th ed.1948). Although many of its sections were taken from the British 1882 Bill of Exchange, it was greatly influenced by the California Code. *Id.* At any rate, the main purpose of the act was to codify the North American law in force, in a single uniform body.

Under the body of laws prevailing in the United States when the Uniform Negotiable Instruments Law was drafted, the payee of an instrument had a no-fault direct action against the one who paid a third person under a forged or unauthorized signature. See: *Talbot v. Bank of Rochester*, 1 Hill 295, 15 N.Y.Common L.Repts. 134 (1841); Kassler, *Forged Indorsements*, 47 Yale L.J. 863 (1938). Said rule, of English origin, allocates on the person who pays a check the risk that the last endorsement be forged or unauthorized. *Mead v. Young*, (1790) cited in Kessler, *supra* at 866–867.

The rule that "even a bona fide purchaser can acquire no title under or through a forged indorsement and that a bona fide payment of an instrument tainted with such forgery does not bar a subsequent action by the true owner against an acceptor or prior parties, has been followed by the courts both in England and in [the United States] and has been incorporated in the Negotiable Instruments Law." Kessler, *supra* at 867–868.

In the balancing of interests, and upon adopting the case law rule, the lawmaker has meant to allocate the risk on the person who pays under a forged or unauthorized endorsement. Subsequent constructions of sec. 23 of the Uniform Negotiable Instruments Law, identical to our section 24, have been consistent with said original intent. See the cases cited in: Note, 100 A.L.R.2d 670 (1965); Beutel, *supra* at 451–455. For cases decided after the Uniform Commerce Code was promulgated, see Note, 23 A.L.R.4th 85 (1983); Bailey, *Brady on Bank Checks*, ch. 24 (5th ed. 1974).

We adopt this rule in our jurisdiction not only because of the persuasiveness of the case law on sec. 23, but also because the language of sec. 24 is in harmony with the legislative intent to have the risk assumed by the person who pays under an unauthorized endorsement. We see no reason to depart from the general rule of construction which presumes that when a Puerto Rican lawmaker adopts a statute from another jurisdiction he also adopts the construction of the same made by the highest court of said jurisdiction as of the date the statute is adopted.[1] *People v. Reyes Bonilla*, 100 P.R.R. 264, 267 (1971); *The People v. Rivera, alias Panchito*, 7 P.R.R. 325, 344 (1904).

### IV

We must still pass on the effect that the plaintiff's negligence may have on his cause of action. Although it is true that the person who pays a check whose indorsement is forged or unauthorized should assume the risk, under the very language of sec. 24, the legitimate owner of the check could be precluded from filing a claim. We have already stated that "[t]he bank that pays a check with a forged indorsement may, in limited cases, escape

---

1. Compare the situation under the 1931 Geneva Convention adopted in most jurisdictions of continental Europe. Under the same, the holder in good faith who, without negligence, acquires an instrument under a forged indorsement, is fully protected. In these cases, the risk falls on the drawee, even if he has not incurred negligence. Farnsworth, *Commercial Paper* 272–274 (3d ed. 1984).

liability to the drawer, by establishing that the latter has been guilty of negligence which contributed to the payment while the bank has been free of negligence." *Sole Electric, Inc., supra* at 426. We hold that the same rule should govern the bank's liability towards the holder of the instrument. See: Note, 87 A.L.R.2d 638 (1963).

Summing up, the general rule on risk distribution applies only to those cases where both parties have been diligent. When both the plaintiff and the defendant bank have incurred negligence, the court may temper the bank's liability. Now then, in cases where the sole negligent party has been the drawee or payee, the bank will be fully relieved of liability.

In the light of the foregoing, the answers to the certified questions are both in the affirmative.

Certification will be issued to this effect.

On the other hand, it bears noting that the Spanish statute on checks has departed from the Geneva Convention. Absent negligence, "the damage resulting from the payment of a false or forged check will be charged on the drawee [bank]." Art. 156, Exchange and Check Law of July 16, 1985.