Negroni Cintrón, Juez Ponente
*727 TEXTO COMPLETO DE LA SENTENCIA
R & G Mortgage Corporation ("R & G") nos solicita la revisión de una Resolución emitida el 14 de diciembre de 1993 mediante la cual el Tribunal de Primera Instancia, Sala Superior de San Juan, se negó a desestimar sumariamente la reclamación que por daños y perjuicios R. C. Corporation h/n/c Rapid Check Cashing ("Rapid Check") había instado en su contra en una demanda en la que también le reclamó a Carlos Vega, Carmen Caraballo y la Sociedad de Gananciales por ellos integrada ("los Vega Caraballo")1, Raúl Rodríguez, Sonia Díaz y la Sociedad de Gananciales por éstos integrada; Cordev Engineering Corporation ("Cordev"); Natividad Benitez, Raúl Villegas y la Sociedad de Gananciales por éstos integrada, h/n/c como Cordev Engineering.'
R & G solicitó la reconsideración de esa resolución, la que fue acogida por el foro recurrido el 24 de enero de 1994, pero denegada dos años después mediante resolución emitida el 15 de marzo de 1996.
Examinada la petición y sus apéndices, expedimos orden de mostración de causa y los recurridos contestaron. Contando con el beneficio de ambas comparecencias, resolvemos.
Expongamos primeramente el trasfondo fáctico incontrovertido y pertinente que surge de los autos ante nos.
I
El 6 de junio de 1989 los Vega Caraballo obtuvieron de R & G un préstamo de $127,120.50 para construir una casa. Acordaron que R & G desembolsaría el mismo mediante pagos parciales al contratista, un pago en cada una de las cuatro etapas de la construcción y después que se certificara que la etapa había sido finalizada, y un último pago igual al diez porciento (10%) del costo de la construcción, una vez se certificara que se había obtenido el permiso de uso de la propiedad, que se había aprobado las instalaciones eléctricas y de agua y que los Vega Caraballo habían aceptado la obra.
En documento separado los primeros contrataron a Cordev para que realizara dicha construcción. En este documento, Cordev fue representada por su presidente, el ingeniero Raúl H. Rodríguez, y pactaron, en síntesis, que los Vega Caraballo le pagarían a Cordev su trabajo por etapa completada y luego de que los Vega Caraballo inspeccionaran la construcción y certificaran la terminación de la etapa correspondiente. Aunque el contrato no lo indicaba así, en carta separada Cordev le solicitó a los Vega Caraballo que los pagos correspondientes se emitieran mediante cheques a la orden de Carlos Vega y Cordev. Los Vega Caraballo estuvieron de acuerdo.
El 21 de julio de 1989 Cordev y Rapid Check suscribieron un contrato separado por el cual esta última se comprometió a cambiarle en efectivo a la primera un cheque de nómina semanal por un período de cuatro semanas, a cambio de una comisión de $2,000.00.
Así las cosas, el 10 de noviembre de 1989 el Ingeniero Raúl Rodríguez le notificó a R & G que podía inspeccionar la primera etapa finalizada de la construcción. El Ingeniero Víctor F. Pagán realizó la inspección y expidió la certificación correspondiente, por lo que R & G procedió a emitir el cheque número 142547 por la cantidad de $22,881.69 a la orden de Cordev, contra su cuenta en el Banco Santander, Sucursal de Hato Rey.
El 13 de febrero de 1990 el Ingeniero Víctor Pagán efectuó la inspección de la segunda etapa de la construcción y expidió la debida certificación, por lo que R & G emitió el cheque número 147858 por la cantidad de $34,332.54. Este cheque le fue entregado el 15 de febrero de 1990 a la Sra. Natividad Benitez, una secretaria empleada de Cordev. Ese mismo día la Sra. Benitez le entregó el cheque al Ingeniero Raúl H. Rodríguez. Este falsificó la firma del Sr. Carlos Vega, endosó el cheque como representante de Cordev y lo llevó a Rapid Check para cambiarlo en efectivo. Allí se lo entregó al Sr. Rafael Concepción Molinary, presidente de Rapid Check, quien sin corroborar los endosos lo cambió en efectivo y se lo entregó a la Sra. Benitez. El Ingeniero Rodríguez se apropió de dichos fondos y los depositó en una cuenta suya, por lo que fue acusado del delito de falsificación de documentos. El 5 de septiembre de 1991 fue encontrado culpable y el 19 de febrero de 1992 fue condenado a dos años de *728 presidio con el beneficio de sentencia suspendida.
No existe controversia alguna en cuanto a que Carlos Vega no endosó el cheque frente al Sr. Concepción Molinary o en otro lugar; que éste no verificó la firma antes de cambiar el cheque; que procedió a cambiarlo en efectivo con el endoso correspondiente al Sr. Carlos Vega falsificado y que éste no tiene relación alguna con la cuenta en la que fue depositado el efectivo por el que se cambió el cheque.
El 11 de julio de 1990 el Sr. Juan R. Díaz, quien para aquel entonces fungía como Vice-Presidente de Servicios Hipotecarios de R & G, le solicitó mediante carta al Banco Santander un crédito por la cantidad de $34,332.54 a la cuenta de R & G basado en que el endoso a nombre de Carlos Vega había sido falsificado. El Banco Santander accedió a lo solicitado.
El 9 de octubre de 1991 Rapid Check presentó la demanda de epígrafe que en parte nos ocupa, reclamándole a los co-demandados antes indicados el pago de los $34,332.54 de los que se apropió el Ingeniero Raúl Rodríguez.
Emplazada, R & G presentó su contestación a la demanda y tras varios incidentes procesales presentó la Moción de Sentencia Sumaria cuya denegatoria es objeto del presente recurso. Los Vega Caraballo presentaron una demanda contra co-parte contra R & G, alegando que de prevalecer la reclamación de Rapid Check, R & G le sería responsable a ellos por aquella suma que éstos resultaren obligados a pagarle a Rapid Check. Le reclamaron además a R & G una indemnización por los daños sufridos como consecuencia de la presentación del pleito, el que, según alegaron, tuvo su origen en la actuación negligente de R & G al expedir el cheque objeto de la controversia. Esta acción, sin embargo, no es objeto del recurso ante nos.
Eventualmente, Rapid Check presentó su oposición a la solicitud de sentencia sumaria, a la que R & G replicó.
Discutida la moción de sentencia sumaria el tribunal emitió el dictamen recurrido.
II
En su recurso Rapid Check le imputa al tribunal de instancia la comisión del siguiente error:

"Erró el Honorable Tribunal de Primera Instancia al declarar No Ha Lugar la Moción de Sentencia Sumaria presentada por la co-demandada-peticionaria R & G Mortgage Corporation, cuando no existía controversia sustancial sobre ningún hecho material y procedía como cuestión de derecho que se dictara sentencia a su favor."

Tiene razón.
Cuando de los documentos que se acompañan a la moción del promovente surge que no existe disputa alguna sobre hechos materiales y sólo resta aplicar el derecho, la Regla 36.1 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, autoriza que en situaciones apropiadas se dicte sentencia sin la necesidad de que se celebre una vista en su fondo y con el fin de aligerar la tramitación de un caso. Consejo de Titulares del Cond. Parkside v. MGIC Financial Corp., opinión del 13 de junio de 1991, 91 J.T.S. 54; Nassar Rizek v. Salvador O. Hernández, 123 D.P.R. 360 (1989); Corp. of Presiding Bishop v. Purcell, 117 D.P.R. 744 (1986).
Para derrotar una moción de sentencia sumaria, la parte promovida deberá presentar declaraciones juramentadas y documentos que controviertan los hechos presentados por el promovente. Corp. Presiding Bishop, supra, pág. 721. "La parte contraria no podrá descansar solamente en las aseveraciones o negaciones contenidas en sus alegaciones, sino que vendrá obligada a contestar en forma tan detallada y específica, como lo hubiere hecho la parte promovente, exponiendo aquellos hechos pertinentes a la controversia que demuestren que existe una controversia real que debe ser dilucidada en un juicio. De no hacerlo así, se dictará sentencia sumaria si procediere." Regla 36.5 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III.
*729 Al adjudicar los méritos de la moción, el tribunal (1) analizará los documentos que acompañan la moción solicitando la sentencia sumaria, los documentos incluidos con la moción en oposición y aquellos que obren en el expediente del Tribunal y (2) determinará si el oponente controvirtió algún hecho material o si hay alegaciones de la demanda que no han sido controvertidas o refutadas en forma alguna por los documentos. No deberá dictar sentencia sumaria cuando (1) existen hechos materiales controvertidos; (2) hay alegaciones afirmativas en la demanda que no han sido refutadas; (3) surge de los propios documentos que se acompañan con la moción una controversia real sobre algún hecho material o (4) si como cuestión de derecho, no procede. PFZ Properties, Inc. v. General Accident Insurance Company, Op. del 7 de septiembre de 1994, 94 J.T.S. 116; Corp. Presiding Bishop, supra, págs. 722-723; Cuadrado Lugo v. Santiago Rodríguez, 126 D.P.R. 272 (1990).
De conformidad con la normativa antes expuesta y por reflejar nuestro examen de los autos que la moción presentada por R & G demostró preponderantemente que no existía controversia alguna sobre los hechos materiales necesarios para adjudicar la desestimación solicitada por ella, el tribunal de instancia podía resolver la procedencia de la moción de sentencia desestimatoria sumaria que R & G presentó, pues solamente restaba que determinara si, como cuestión de derecho, el remedio que R & G solicitaba procedía.
Los autos demuestran que no existe controversia alguna en cuanto a los siguientes hechos materiales: Rapid Check cambió el cheque número 147858 por la cantidad de $34,332.54 emitido por R & G a favor de Carlos Vega y Cordev como desembolso parcial del préstamo de construcción otorgado por R & G a los Vega Caraballo para la construcción de su residencia, tarea a cargo de Cordev. La firma del Sr. Vega fue falsificada por el Ingeniero Rodríguez quien lo endosó en nombre del primero y Rapid Check nada hizo para verificar la autenticidad del endoso. El cheque número 147858 expedido por R & G a favor de Carlos Vega y Cordev por la suma de $34,332.54 no fue cobrado por ninguno de los dos pues la firma del Sr. Carlos Vega fue falsificada por el Ingeniero Rodríguez y éste se apropió del dinero una vez lo cambió. El referido cheque fue depositado en la cuenta número 0750172207 del Federal Savings Bank, con la cual los Vega Caraballo no tenían relación alguna y, finalmente, el cheque fue girado contra la cuenta de R & G en el Banco Santander, Sucursal de Hato Rey.
Rapid Check no pudo controvertir ninguno de estos hechos materiales que fueron expuestos y demostrados en la moción de sentencia sumaria presentada por R & G. Por el contrario, en su oposición expuso que estaba básicamente de acuerdo con la exposición fáctica presentada por R & G, aunque indicó que no se habían expuesto otros hechos que en su opinión eran pertinentes, a saber: Que existía un acuerdo de cambio de cheques entre Cordev y Rapid Check que era conocido por R & G; que la segunda certificación de inspección del proyecto de los Vega Caraballo fue cancelada por razones que desconoce; que se celebró una reunión entre los co-demandados y se aceptó que la segunda etapa no había sido terminada y que R & G no le comunicó de inmediato a Rapid Check la existencia de problemas con el endoso del cheque y de la reunión antes indicada.
R & G replicó y no contravino estos hechos. Argumentó acertadamente que estos hechos eran impertinentes y no impedían que el tribunal de instancia determinara que no existía controversia sobre los hechos materiales. El hecho de que R & G conociera o no que Rapid Check había contratado con Cordev el cambio de los cheques que el primero expidiera a nombre de Carlos Vega y Cordev no altera la realidad de que R & G no formó parte de ese contrato al igual que Rapid Check tampoco formó parte del contrato entre los Vega Caraballo y R & G, por lo que las obligaciones contractuales de cada cual son distintas y separadas. En tales circunstancias, el hecho de que R & G conociera la existencia del contrato entre Rapid Check y Cordev no le impuso obligación adicional alguna a las que pactó con Carlos Vega y menos con respecto a Rapid Check.
Por otro lado, el que se cancelara la certificación a base de la cual se autorizó la expedición del cheque que posteriormente fue falsificado por el Ingeniero Rodríguez, resulta totalmente impertinente para resolver si R & G le responde a Rapid Check por la suma que el Ingeniero Rodríguez se apropió. La pérdida sufrida por Rapid Check fue consecuencia de la falsificación voluntaria efectuada por el Ingeniero Rodríguez y el que la parte de la obra a que se refería la certificación no se hubiere terminado no guarda relación directa alguna con el hecho de que el cheque hubiese sido falsificado. Tampoco resulta pertinente el que R & G no le hubiere informado inmediatamente a Rapid Check que *730 el cheque de referenda había sido falsificado.
En tales circunstancias, el tribunal de instancia sólo tenía que examinar el derecho aplicable y determinar si R & G tenía derecho al remedio que solicitaba. Nuestro análisis revela que sí.
III
Ante instancia y ante nos, Rapid Check postula que lo dispuesto en el Artículo 376 de la Ley de Instrumentos Negociables vigente a la fecha de los hechos de la demanda, 19 L.P.R.A. see. 24, apoya su reclamo contra R & G. Sostiene que ésta le responde por la suma que pagó al cambiar el cheque falsificado por el Ingeniero Rodríguez. No tiene razón.
El artículo 376, supra, dispone lo siguiente:

"Cuando se falsificare una firma o se hiciere sin autorización de la persona de quien se supone que procede la firma, no tendrá efecto alguno, ni se adquirirá, en virtud de ella, derecho alguno para retener el documento o para cancelarlo o para obligar al pago del mismo a cualquiera de las partes que en él figuren, a menos que la parte contra quien se tratare de hacer valer tal derecho estuviere impedido para alegar en su defensa la falsedad o falta de autorización."

El texto citado claramente torna en inefectivo todo instrumento e impide, entre otras cosas, que se obligue al pago del mismo, cuando en éste se falsificare una firma. Esto incluye la firma de un tomador cuyo endoso es requerido. P.R. Tobacco Mkt. Assn. v. P.R. & American Ins., 100 D.P.R. 387 (1972). Como consecuencia de ello, la firma falsificada en un cheque no trasmite derecho. Solé Electric, Inc. v. Bank of Nova Scotia, 103 D.P.R. 423 (1975).
Dicho artículo le impone al banco librador la responsabilidad de responderle directamente al librador del cheque o a los cesionarios de éste por el monto del cheque, aunque el banco no responde cuando, ausente negligencia del banco, la causa próxima de la falsificación del cheque es la negligencia del librador. St. Paul Fire v. Caguas Federal, 121 D.P.R. 761(1988); P.R. Tobacco Mkt. Assn. v. P.R. & American Ins., 100 D.P.R. 387 (1972). La negligencia debe ser crasa, imputable al librador del cheque y causante de la falsificación, es decir, que facilite el pago. Solé Electric, Inc. v. Bank of Nova Scotia, 103 D.P.R. 423, 426 (1975).
Al aplicar este derecho a los hechos incontrovertidos antes expuestos, resulta evidente que R & G no le responde a Rapid Check por el monto del cheque falsificado que le cambió al Ingeniero Rodríguez. R & G fue el librador de cheque, pero concluimos que por virtud del citado artículo, Rapid Check, como tomador del cheque falsificado no puede reclamarle a R & G el pago del mismo. En primer lugar, el cheque fue indiscutiblemente falsificado por el Ingeniero Rodríguez. En segundo lugar, R & G no incurrió en conducta negligente alguna que facilitara el que el Ingeniero Rodríguez falsificara la firma de Carlos Vega y cambiara el cheque para su propio beneficio.
Sobre este último particular, la contención de Rapid Check es que como el cheque se expidió luego de que se emitiera una certificación falsa, esa omisión de R & G lo obliga a pagarle el cheque. No tiene razón. Olvida que el artículo citado requiere que la conducta negligente haya contribuido a la falsificación del instrumento, asumiendo para efectos del análisis que esa omisión fue negligente. Por el contrario, los hechos pertinentes demuestran a la saciedad que esa omisión no contribuyó en forma alguna a la falsificación. El mejor indicio de ello es que aun si la certificación se hubiese emitido correctamente, el Ingeniero Rodríguez hubiera podido falsificar la firma de Vega, pues la falsificación que realizó el Ingeniero Rodríguez fue un acto voluntario, personal e ilegal, que en forma alguna estaba relacionado con la expedición de la certificación.
Debido a ello debemos concluir que Rapid Check no tiene razón al postular que de conformidad con el Artículo 376 de la Ley de Instrumentos Negociables, supra, R & G le responde por el monto del cheque endosado fraudulentamente por el Ingeniero Rodríguez.
IV
Por otro lado, entre R & G y Rapid Check no existía relación contractual que obligara a ía primera a responderle a la segunda por el monto de los cheques que cambiara si éstos resultaban falsificados. *731 Los hechos incontrovertidos antes consignados no dejan duda alguna en cuanto a que la relación contractual entre Rapid Check y Cordev fue una separada y distinta de la de R & G con los Vega Caraballo. R & G no tenía deber contractual alguna con Rapid Check que lo obligara a satisfacer el dinero que el Ingeniero Rodríguez se apropió al falsificar la firma del Sr. Carlos Vega en el cheque de referencia.
Finalmente, tampoco hemos identificado en los autos algún deber de R & G hacia Rapid Check cuya violación le obligue a responderle al tenor de lo dispuesto en el Artículo 1802 del Código Civil, 31 L.P.R.A. see. 5141. La acción en daños y perjuicios al amparo del artículo de referencia depende de que el demandante establezca por preponderancia de prueba, los elementos constitutivos de la causa de acción: (1) la realidad del daño sufrido; (2) la existencia de un nexo causal entre el daño y la acción u omisión de otra(s) persona(s) y (3) que dicho acto u omisión fue culposo o negligente. Elba v. U.P.R., Op. de 23 de enero de 1990, 90 JTS 13; Soc. Gananciales v. G. Padín Co., Inc., 117 D.P.R. 94, 105 (1986); Reyes v. Sucn. Sánchez Soto, 98 D.P.R. 305 (1970); Hernández v. Fournier, 80 D.P.R. 93 (1957). El grado de cuidado que el ordenamiento requiere es el exigible a un hombre prudente y razonable ante las circunstancias del caso. Ortiz v. Levitt & Sons, 101 D.P.R. 290 (1973); Hernández v. La Capital, 81 D.P.R. 1031 (1960).
La causalidad requerida en Puerto Rico es la adecuada, lo que implica que para que exista responsabilidad civil, la ocurrencia del daño en cuestión debe ser previsible dentro del curso normal de los acontecimientos y según las circunstancias particulares del caso. Elba v. U.P.R., supra.
En cada caso la obligación de anticipar y de evitar la ocurrencia de daños dependerá de lo que es razonablemente previsible. "Lo determinante es si era de esperarse la ocurrencia del daño". Torres Maldonado v. J.C. Penney, Op. de 3 de junio de 1992, 92 JTS 62.
Un examen cuidadoso y desapasionado de los hechos incontrovertidos antes reseñados revela sin lugar a dudas que R & G no incurrió en acción u omisión alguna que constituyera la causalidad adecuada del daño que sufrió Rapid Check. A la luz del artículo 1802 del Código Civil, supra, el que R & G emitiera la certificación requerida como condición para emitir el cheque que posteriormente fue falsificado por el Ingeniero Rodríguez, no fue la causa eficiente de la pérdida del dinero en efectivo que Rapid Check le entregó al Ingeniero Rodríguez, al cambiar el cheque que éste falsificó. Se debió al acto voluntario, ilegal e independiente del Ingeniero Rodríguez al falsificar la firma del Sr. Carlos Vega. La actuación delictiva del Ingeniero Rodríguez al falsificar el cheque y el daño que ello le produjo a Rapid Check no era razonablemente previsible, aun asumiendo que la expedición de la certificación incorrecta constituyese un acto negligente de R & G, lo que no podemos concluir a base de la prueba que apoya los hechos determinados.
Debemos concluir, por tanto, que a base del derecho que podría aplicar a los hechos incontrovertidos del caso, el tribunal de instancia debió desestimar sumariamente la reclamación formulada por Rapid Check contra R & G, pues la demanda no expone en cuanto a ésta una reclamación que justifique la concesión del remedio solicitado, bajo supuesto alguno de derecho concebible, Figueroa v. Tribunal, Superior, 88 D.P.R. 122 (1963), o bajo cualquier estado de hechos que puedan ser probados en apoyo de su reclamación. Reyes v. Sucesión Sánchez Soto, 98 D.P.R. 305 (1973).
V
Por los fundamentos antes expuestos, se revoca la resolución recurrida, se dicta sentencia parcial disponiendo la desestimación de la reclamación que contra R & G formuló Rapid Check en su demanda y se devuelve el pleito al tribunal de instancia para que continúen los procedimientos allí pendientes.
Lo acuerda y manda el Tribunal y lo certifica la Secretaria General.
Aida I. Oquendo Graulau
Secretaria General